UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
ALYSSA BROWN, on behalf of herself and all
others similarly-situated,

                                Plaintiff,

        -against-

ADVANCED TATTOO MANAGEMENT
CONSULTING, CORP. d/b/a TATTOO LOU'S, and
LOU RUBINO in his individual and professional
capacities,

                                Defendants.
-----------------------------------------------------------------------------X

**COMPLAINT**

**Docket No.**:

Jury Trial Demanded

ALYSSA BROWN ("Plaintiff"), on behalf of herself and all others similarly-situated ("FLSA Plaintiffs"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against ADVANCED TATTOO MANAGEMENT CONSULTING, CORP. d/b/a TATTOO LOU'S ("Defendant Tattoo Lou's"), and LOU RUBINO, in his individual and professional capacities (collectively as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.     This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a); (iii) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iv) the minimum wage provisions of the NYLL, N.Y. Lab. Law

§ 652(1); (v) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL, N.Y. Lab. Law § 195(3); (vi) the requirement that employers furnish employees with wage notices annually and at the time of hire containing specific categories of accurate information under the NYLL, N.Y. Lab. Law § 195(1)(a); (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendants, a tattoo and body piercing shop and its owner, from, with the exception of a two month period, April 2012 through December 2014, as a piercer and "front girl." Throughout her employment, Plaintiff worked between forty and sixty hours per week. However, in April 2012, when Plaintiff began her employment, Defendants did not pay her at any rate of pay for any of her hours worked because they improperly classified her as a "trainee" or "apprentice." In November 2012, Defendants removed the erroneous "trainee" or "apprentice" label, and from then through December 2014, again with a two-month exception, allowed Plaintiff to perform a combination of piercing and "front girl" duties. For this work, Defendants did not pay Plaintiff at any hourly rate of pay for her hours worked. Instead, Defendants only paid Plaintiff an amount equal to one-half of the money received by the shop for Plaintiff's piercing services, which did not equal the minimum wage rate of pay per hour worked, let alone one and one-half times the minimum wage rate per hour worked each week in excess of forty. As a result, the Defendants failed to properly compensate Plaintiff in accordance with the overtime or minimum wage provisions of the FLSA and NYLL.

3.      In addition, Defendants failed to furnish Plaintiff with accurate and/or complete wage statements on each payday, nor did they provide Plaintiff with wage notices at the time of hire, annually, or at any time thereafter as the NYLL requires.

2

4.      Defendants paid and treated all of their non-managerial employees in this same manner.

5.      Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of herself and all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. §§ 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events comprising the claims for relief occurred within this judicial district.

## PARTIES

8.      At all relevant times herein, Plaintiff was and is a resident of Suffolk County, New York, and is an "employee" entitled to protection as defined by the FLSA and NYLL.

9.      At all relevant times herein, Defendant Tattoo Lou's was and is a domestic business corporation organized under the laws of the State of New York, with its registered corporate mailing address at P.O. Box 491, Saint James, New York 11780, and that is located  at 579 West Sunrise Highway, West Babylon, New York.

10.     At all relevant times herein, Defendant Rubino was and is owner of Defendant Tattoo Lou's.  Defendant Rubino made and makes all managerial decisions on behalf of Defendant Tattoo Lou's, including all matters relating to employees' hours worked,

compensation, and rates and methods of pay, and the hiring and firing of employees, including those matters with respect to Plaintiffs and FLSA Plaintiffs.  In fact, Rubino personally had final say over all pay practices for the shop.

     11.    At all relevant times herein, Defendants are "employers" within the meaning of the FLSA and NYLL.  Additionally, the Defendants' qualifying annual business exceeds $500,000, and Defendants are engaged in interstate commerce within the meaning of the FLSA as they purchased and routinely work with products and supplies, such as tattoo needles, piercing needles, and cleaning supplies, provided by outside vendors in the course of their business that originated in states other than New York, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.  Furthermore, all of Defendants' employees, including Plaintiff and FLSA Plaintiffs, are individually engaged in interstate commerce, as they all routinely handle and work with goods, including piercing needles, tattoo ink, and cleaning supplies that have been and continue to be moved in interstate commerce.  This independently subjects Defendants to the overtime requirements of the FLSA with respect to Plaintiff and FLSA Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

     12.    Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation, minimum wage compensation, and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on her own behalf as well as those in the following collective action:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work for Defendants as non-exempt employees who give consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them for the time worked in excess of forty hours

4

per week; and/or (2) minimum wages that are legally due to them for each hour worked ("FLSA Plaintiffs").

13.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: performed similar tasks, as described in the "Background Facts" section below; were subject to the same laws and regulations; were paid in the same or similar manner; were required to work in excess of forty hours each workweek; were not paid commissions equaling one and one half times the minimum wage rate of pay on a weekly basis for each hour worked; were not paid at an amount equal to the minimum hourly required rate of pay for each hour worked; and were not paid the required one and one-half times their respective regular rates of pay, or time and one-half the minimum wage rate of pay, if higher, for all hours worked per workweek in excess of forty.

14.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the minimum hourly required rate of pay for all hours worked, as well as the rate of one and one-half times their respective regular rates of pay, or the minimum wage rate, if higher, for all hours worked each workweek above forty, yet they purposefully and willfully chose not to do so.

15.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, or at the minimum wage rate for each hour worked.

## BACKGROUND FACTS

16.     At all relevant times herein, Defendant Rubino was and is the owner of Defendant Tattoo Lou's. Defendant Rubino made all managerial decisions on behalf of Defendant Tattoo Lou's, including all matters relating to employees' hours worked, compensation, and rates and

methods of pay, and the hiring and firing of employees, including those matters with respect to Plaintiffs and FLSA Plaintiffs.

17.     Plaintiff's employment with Defendants began in or around April 2012 and, with a brief interlude, lasted until December 23, 2014.

18.     From in or about April 2012 through September 2012, Defendants required Plaintiff to work, and Plaintiff did in fact work, fifty hours per week, all for Defendants' benefit. To work these hours, Plaintiff worked five days per week.   During each shift, Defendants required Plaintiff to work from 12:00 p.m. to 10:00 p.m.

19.     During this time, Defendants limited Plaintiff's job duties to only cleaning, sterilizing jewelry, performing work at the front counter, and completing various other menial tasks.  For this work, Defendants did not pay Plaintiff anything.

20.     Defendants justified not paying Plaintiff for her work because they claimed that she was an exempt "apprentice" or "trainee."  Despite these efforts, Plaintiff fell outside of the exemption because she was forced to perform substantial amounts of janitorial and receptionist duties, such as answering customer telephone calls and cleaning the shop.  These duties were solely for the benefit of Defendants and were devoid of any connection to an educational purpose.   Further, Plaintiff's employment during this period was perpetual in nature and amounted to nothing more than a trial period of employment.

21.     In November 2012, Defendants removed the erroneous "trainee" or "apprentice" label from Plaintiff.  From that point until August 2013, Defendants allowed Plaintiff to provide piercing services to customers.  However, Defendants also forced Plaintiff to continue to perform "front girl" duties, such as answering phones and cleaning the shop, for over fifty percent of her time at the shop.

22.      From November 2012 through December 2012, Defendants required Plaintiff to work, and Plaintiff did in fact work, forty hours per week, all for Defendants' benefit.  To work these hours, Plaintiff worked four days per week.  During each shift, Defendants required Plaintiff to work from 12:00 p.m. to 10:00 p.m.

23.      From January 2013 through May 2013, Defendants required Plaintiff to work, and Plaintiff did in fact work, fifty hours per week, all for Defendants' benefit.  To work these hours, Plaintiff worked five days per week.  During each shift, Defendants required Plaintiff to work from 12:00 p.m. to 10:00 p.m.

24.      Subsequently, from June 2013 through August 2013, Defendants required Plaintiff to work, and Plaintiff did in fact work, fifty hours per week, all for Defendants' benefit. To work these hours, Plaintiff worked five days per week.  During each shift, Defendants required Plaintiff to work from 12:00 p.m. to 10:00 p.m.

25.      For her work between November 2012 through August 2013, Defendants did not pay Plaintiff at any hourly rate of pay for any of her hours worked.  Instead, Defendants paid Plaintiff only a portion of the money that they collected for each piercing service she rendered; however, the amount of compensation paid each week fell below the minimum wage rate of pay under the FLSA and NYLL for each hour worked, and thus was below one and one-half times the minimum wage fare for all hours worked in excess of forty.

26.      Plaintiff did not work for Defendants from August 2013 until October 2013.

27.      After her return, from October 2013 through December 2014, Defendants required Plaintiff to work, and Plaintiff did in fact work, fifty hours per week, all for Defendants' benefit.  Again, Plaintiff worked five days per week from 12:00 p.m. to 10:00 p.m.  During this time, Plaintiff spent the majority of her time performing "front girl" work.

28.     For her work between October 2013 through December 2014, Defendants did not pay Plaintiff at any hourly rate of pay for any of her hours worked.  Instead, Defendants paid Plaintiff only a portion of the money that they collected for each piercing service she rendered; however, the amount of compensation paid each week fell below the minimum wage rate of pay under the FLSA and NYLL for each hour worked, and thus was below one and one-half times the minimum wage fare for all hours worked per week in excess of forty.

29.     The only additional compensation that Defendants paid Plaintiff other than what is described in the prior paragraphs is that from July 2014 until September 2014, the Defendants paid Plaintiff an additional $50 per day.  Even with this additional pay, Plaintiff's compensation per day during this time was still below the minimum wage for each hour worked, and one and one-half times the minimum wage rate for each hour worked per week in excess of forty.

30.     Throughout Plaintiff's entire employment with Defendants, Defendants intentionally did not furnish Plaintiff with a weekly wage statement that accurately listed all of the following: hours worked, gross wages, deductions, net wages, straight time rate, and overtime rate.

31.     Moreover, Defendants intentionally did not provide Plaintiff with a wage notice at the time of her hire, or ever, which accurately detailed: her rate of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business; and the telephone number of the employer.

32.     Defendants did not record and did not permit Plaintiff and FLSA Plaintiffs to record all of their hours worked.

33.     Defendants acted in this reckless manner in an effort to maximize their profits and minimize labor costs.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

34.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay or at one and one-half times the minimum wage rate for those hours, if greater, for any hours worked exceeding forty in a workweek.

36.     As described above, Defendants are employers within the meaning of the FLSA while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

37.     As described above, Plaintiff and FLSA Plaintiffs worked in excess of forty hours each week, yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

38.     As also described above, at no time were Plaintiff and FLSA Plaintiffs exempt under the "apprentice exemption" or "trainee exemption" because Defendants forced them to preform janitorial and receptionist work solely for Defendants' benefit, which was devoid of any educational value for Plaintiff and FLSA Plaintiffs.  This period was perpetual in nature and amounted to nothing more than a trial period where Defendants evaluated and benefited from this labor.

39.     Furthermore, when Plaintiff and FLSA Plaintiffs began providing piercing services, the commission they received did not equal one and one half times the minimum wage rate for each hour worked over forty per week.  Moreover, during this period Defendants forced

9

Plaintiff and FLSA Plaintiffs to spend approximately half of their times preforming non-commission generating work.

40.     The Defendants' actions were in willful violation of the FLSA.

41.     Plaintiff and FLSA Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay, or at the rate of one and one-half times the minimum wage rate, if greater.

42.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, attorneys' fees, and costs for the Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Minimum Wage Violations of the FLSA*

43.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44.     29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked.  Minimum wage under the FLSA during all relevant times was $7.25 per hour.

45.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

46.     As also described above, Defendants did not compensate Plaintiff and FLSA Plaintiffs at the minimum hourly rate required by the FLSA for all hours worked.

47.     As also described above, at no time were Plaintiff and FLSA Plaintiffs exempt under the "apprentice exemption" or "trainee exemption" because Defendants forced them to preform janitorial and receptionist work solely for Defendants' benefit, which was devoid of any educational value for Plaintiff and FLSA Plaintiffs.  This period was perpetual in nature and

amounted to nothing more than a trial period where Defendants evaluated and benefited from this labor.

48.     Defendants' actions were willful violations of the FLSA.

49.     Plaintiff and FLSA Plaintiffs are entitled to payment at the minimum wage for every hour they worked for Defendants pursuant to the FLSA's minimum wage provisions.

50.     Plaintiff and FLSA Plaintiffs are entitled to liquidated damages, attorneys' fees, and costs for Defendants' violations of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINT DEFENDANTS
### *Unpaid Overtime under the NYLL and NYCCRR*

51.     Plaintiff, and any FLSA Plaintiff who opts in to this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52.     NYLL § 160 and NYCCRR tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay or at one and one-half times the minimum wage rate for those hours, if greater, for any hours worked exceeding forty in a workweek.

53.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff, and any FLSA Plaintiff who opts-in to this action, is an employee within the meaning of the NYLL.

54.     As also described above, Plaintiff, and any FLSA Plaintiffs who opts-in to this action, worked in excess of forty hours each week, yet Defendants failed to compensate them in accordance with the NYLL's overtime provisions.

55.     As also described above, at no time were Plaintiff, and any FLSA Plaintiffs who opts-in to this action, exempt under the "apprentice exemption" or "trainee exemption" because

Defendants forced them to preform janitorial and receptionist work solely for Defendants' benefit, which was devoid of any educational value for Plaintiff and FLSA Plaintiffs. This period was perpetual in nature and amounted to nothing more than a trial period where Defendants evaluated and benefited from this labor.

56.     The Defendants' actions were in willful violation of the NYLL.

57.     Plaintiff, and any FLSA Plaintiffs who opts-in to this action, are entitled to overtime pay for all hours worked per week in excess of forty at one and one-half times their regular rates of pay, or at the rate of one and one-half times the minimum wage rate, if greater.

58.     Plaintiff, and any FLSA Plaintiffs who opts-in to this action, are also entitled to liquidated damages, interest, attorneys' fees, and costs for the Defendants' violation of the NYLL's overtime provisions.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Minimum Wage Violations of the NYLL*

59.     Plaintiff, and any FLSA Plaintiff who opts in to this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     NYLL § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked. From 2009 through December 31, 2012, the minimum wage under the NYLL was $7.25 per hour. Further, from January 1, 2013 through December 31, 2013, the minimum wage under the NYLL was $8.00 per hour. Since December 31, 2014 and continuing through the time of filing of this complaint, the minimum wage rate under the NYLL is $8.75 per hour.

61.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employees within the meaning of the NYLL.

62.     As also described above, Defendants did not compensate Plaintiff, or any FLSA Plaintiffs who opts-in to this action, at the minimum hourly rate required by the NYLL for all hours worked.

63.     As also described above, at no time were Plaintiff, or any FLSA Plaintiffs who opts-in to this action, exempt under the "apprentice exemption" or "trainee exemption" because Defendants forced them to preform janitorial and receptionist work solely for Defendants' benefit, which was devoid of any educational value for Plaintiff and any potential FLSA Plaintiffs.  This period was perpetual in nature and amounted to nothing more than a trial period where Defendants evaluated and benefited from this labor.

64.     The Defendants' actions were in willful violation of the NYLL.

65.     Plaintiff, and any FLSA Plaintiffs who opts-in to this action, are entitled to payment at the minimum wage for every hour that she worked for Defendants pursuant to the NYLL's minimum wage provisions.

66.     Plaintiff and any FLSA Plaintiffs who opts-in to this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for the Defendants' violations of the NYLL's minimum wage provisions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

67.     Plaintiff, and any FLSA Plaintiff who opts in to this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68.     N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

69.     As described above, Defendants willfully failed to furnish Plaintiff and any FLSA Plaintiffs who opts-in to this action on each payday with accurate wage statements containing the criteria required under the NYLL.

70.     Pursuant to N.Y. Lab. Law § 198(1-d), Defendants are liable to Plaintiff and any FLSA Plaintiffs who opts-in to this action in the amount of $100 for each failure of this sort.

71.     For their failures, besides the statutory penalties, Defendants are also liable to Plaintiff and any FLSA Plaintiffs who opts-in to this action for liquidated damages, attorneys' fees, and costs.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Wage Notices in Violation of the NYLL*

72.     Plaintiff, and any FLSA Plaintiff who opts in to this action, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73.     N.Y. Lab. Law § 195(1)(a) requires that employers furnish employees with a wage notice at the time of hire, on an annual basis, or at any time thereafter, containing accurate and specifically enumerated criteria.

74.     As described above, the Defendants willfully failed to furnish Plaintiff and any FLSA Plaintiffs who opts-in to this action with a wage notice containing the criteria enumerated under NYLL.

75.     Pursuant to N.Y. Lab. Law § 198(1-b), the Defendants are liable to Plaintiff and any FLSA Plaintiffs who opts-in to this action in the amount of $50 for each workweek that the violations occurred.  For their failures, besides the statutory penalties, the Defendants are also liable to Plaintiff and any potential FLSA Plaintiffs for liquidated damages and attorneys' fees, and costs.

14

## DEMAND FOR A JURY TRIAL

76.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and FLSA Plaintiffs demand judgment against Defendants as follows:

A.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws and regulations;

B.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C.      An order restraining Defendants from any retaliation against Plaintiff and FLSA Plaintiffs for participation in any form in this litigation;

D.      Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

E.      All damages that Plaintiff and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages, any short fall between wages paid and those due under the law that Plaintiff and FLSA Plaintiffs would have received but for the Defendants' unlawful payment practices;

F.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

G.      Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, other costs, and an award of a service payment to Plaintiff Brown;

H.      Pre-judgment and post-judgment interest, as provided by law; and

I.      Granting Plaintiff and FLSA Plaintiffs any other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
        January 28, 2015

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel.: (516) 248 – 5550
Fax.: (516) 248 – 6027

By:     _____

ADAM A. BIGGS (AB1228)
MICHAEL J. BORRELLI (MB 8533)
ALEXANDER T. COLEMAN (AC8151)